The next case before the court, as counsel just referred to, is also related to Hill-Rom Services. It is case number 15-1305, In Re Hill-Rom Services, Inc. And this time, counsel, you'll be arguing against counsel from the government. So you want, again, to try to reserve five minutes? I will try to. We'll see how that works. We'll see how it works out. Yeah. Whatever the court prefers at that point would be fine with me. Okay. This is an ex parte case, as distinct from the IPR case. Correct. And what is our standard of review in this kind of environment? So, I mean, for the obviousness question, that's de novo. The underlying facts, you're going to look for substantial evidence. But again, I think because this is a review of the Patent Office opinion, or the PTED's opinion, that we have to at least somewhat look to their reasoning in deciding whether or not they were right or wrong. And obviously this court can do it at once, but avoid putting too much of our own reasoning to try to bolster what they may or may not have done correctly, because my client didn't have an opportunity to respond to that at the time the patent was in the Patent Office. And one point I will make, and I think we submitted a supplemental brief on this, is this patent has since expired. So, while originally the case was looked at under the broadest reasonable interpretation for clean construction, that is no longer the case. And that will come into play with one of the arguments that I make today. Okay. So, I'm not going to spend a lot of time talking about motivation to combine again. I think a lot of the issues we just talked about in the prior appeal are going to be very similar in this appeal. What I'd really like to focus on in my time, unless the court would prefer to get back into some of those issues, are three critical areas, I believe, that TTAB made in this particular appeal. The first was whether or not Travis's prior art, based on the fact that my client's patent has an earlier conception date, and we believe has diligent reduction of practice. So, I want to talk about that a little bit. The second thing is whether or not the Hillron manual, which is the second bed reference, in fact, had a communication network in it. And that's where, when I mentioned the issue of clean construction comes into play, even under the broadest reasonable interpretation, it's my position that a light switch or something akin to a light switch is not a communication network as described in this patent, but certainly not under the Phillips standard that we're now under would we consider a light switch to be a communications network. And then finally, I want to talk just briefly about the PTAB's sole basis for finding a motivation to combine in this particular case, which was an express disclosure in the Hines reference talking about greater processing speeds. And you probably saw this from our briefing, but our position there is there is no discussion of higher processing speeds. When it talks about high transmission speeds and high processing, it doesn't ever compare those to anything else, and there's certainly no indication in the record anywhere that one of Spill and the Art would have looked at that and said, well, that's going to be faster than what's currently being used in these peer-to-peer networks that are currently in place. I'm sorry, the master-slave networks that are currently in place. So do you want to start with Travis? I do. So let's talk about that. Now these are, there are a lot of underlying factual conclusions here that we're looking at and that we're reviewing, aren't we? There are a number of, especially on the Travis issue, I would agree. Right, so there's a real uphill battle that you've got here. They have to show substantial evidence, and I think the problem, as I looked at this and tried to think of what would interest the court and what would, I guess, increase my opportunities to get a reverse, this at first, I came to the same conclusion. This is going to be very factually intensive. Should I leave this for later? And I've convinced myself over the last few months that that's not the case, and the reason is we've got one reference for conception, and it's at A1187 through 92, that really does depict all the elements in the claim. And the only reason, or the primary reason that the PTAB rejected that as conception is they said that's one of, it lists multiple different types of communication networks. And the CAN, or I'm sorry, yeah, the peer-to-peer was only one type that it listed. So there really wasn't a decision made to use that one. And I think the case law is fairly clear that you can come up with different ideas, and you don't even have to implement them all. But just because you have multiple ideas doesn't detract from the fact that that's still an invention. And so it's our belief that there was clearly conception. And then we go to motivation, or I'm sorry, diligent reduction to practice. We have a span of eight months where we've got over 20 documents showing, and this is from 20 years ago. Granted, it would be great to have every document we have from them, but we don't. But we have 20 documents that show a continual and very robust process of developing this very complex hospital bed. And so for one, looking now to try to show diligent reduction of practice 20 years ago, I submit you're not going to find much better evidence than a continual process with very detailed time schedules all the way up through, I think it's March of, and I'm forgetting the year, but the March time frame when I think it's almost conceded that the patent prosecution was every day up to the filings. Let's look at conception, because I agree with you. You've got a better argument on reduction of practice. But the board made some pretty specific findings about conception. You characterized them as saying just because you had alternatives that that meant you didn't know what you were doing or didn't really have an idea. But I don't think that's a fair characterization. I think the board said that there were so many alternatives, three or four alternatives, and there wasn't really evidence that you'd landed on anything. And the examiner also specifically discounted the Morrison testimony and Morrison exhibits and didn't find them to be persuasive or credible. So I guess part of my problem is how do we overcome those conclusions? Well, on the Morrison declaration, first of all, Mr. Morrison has been a patent attorney at Stryker for many, many years and knows his technology well. That said, we don't really need his testimony. I mean, the documents themselves that were attached. At Hill. Yeah. Did I say Stryker? Yeah. Sorry about that. And Mr. Morrison's here, so I'm sure he's appreciating that right now. But no, the declaration in and of itself, while important to, I think, present the documents, I don't think his testimony is really necessary for what we're trying to argue. You can look at the documents themselves, and in fact, I have, for purposes of this appeal, I've really focused in on just one document that I believe shows the conception. They have other issues with the other documents we had originally pointed to, like the inventor's issues, things like that. I think for purposes of today, what I am focusing on, again, is this one document, which was Exhibit 1 to the Morrison Declaration, which is signed at the top by one of the inventors. So we've got his signature on there, so he was certainly part of this. And it goes through and it has each of the different elements in here. Now, when we originally, I think, submitted the Morrison Declaration, we didn't necessarily talk about the different modules being interconnected. But if you look at the diagram, and this was in our reply brief, the diagrams in here, it's very clear that you've got the different modules and the nodes that are all interconnected. You've got the Echelon Distributed Control System, which is one of the four alternatives that you could have used, which is a peer-to-peer communication network. You've got, on the last page of this exhibit, or the next to last page, the bed articulation, where you've got the high-low, the knee, the chair, so you've got the different pieces that were being run by the peer-to-peer network. So, in my mind, this document is a clear showing of conception. And based on this, very shortly thereafter, we've got documents continuing on throughout the project that shows exactly what they were thinking here. And yes, it was one of four ideas. I don't dispute that. But it was a complete idea. There were four complete ideas. We could have put any of these four in there. But that's the question, is how complete, really, were they? I mean, you're talking about one bullet point in an entire slideshow, right, that you're saying shows you that you've actually got this idea? That's for conception, yes, Your Honor. I think this shows the elements in the claim. And it's more than one slide. I think it's several slides in here that talk about the different aspects that go into the claim that's at issue. So, to Your Honor's point, I primarily rest on this document, so if factually we don't feel that this is substantial evidence, then that's my case. But I think it is, and that's our position. And it's our position that the PTAB, looking at this, shouldn't look at this and say, well, we're just going to discount that. And the other problem I have is the PTAB didn't do anything. The PTAB just relied on what the examiner did. We didn't get any sort of review of this whatsoever. I'd like you to address, if you would, the second alternative ground that the PTAB employed, which is Hines plus the Hill-Rom manual, assuming that the Hill-Rom manual does not display, does not teach communication. Now, you say that's a new ground of rejection. The CTO comes back and says, well, you should have filed a petition that requests reconsideration. You didn't, and your answer to that is, well, that, in effect, I guess you're saying that regulation is invalid. I read your cases on that. They don't seem to me to really support the proposition of the regulation saying if you want to raise that kind of an issue, you have to file the following kind of paper is invalid. But let's assume that it's valid for now. What's wrong with that ground of rejection on the merits? So you're saying forget about whether the communication… This is the one that's found on the very last page of the board's, page 18 of the board's opinion at 850. In other words, take the Hill-Rom manual and assume that we won't treat what you call the light switch system as a communications network, and instead pick up the communications network from Heinz, which is a PTP network. I think everybody pretty much is on the same ground on that. And Heinz has, if not a bed, then at least something that is arguably analogous to a bed, a table that moves in multiple directions thanks to the modules. And set aside whether or not the PTAB can regulate, who can review them or not. Take that argument out you're saying as well, correct? Who can review them? So our secondary argument there was their regulation is invalid. I mean, if you want to talk about that, you can, but I don't… I'm happy to leave that word. You have an uphill battle on that one. I'll leave that one where it is in the papers. So it really gets back to this question of whether or not there is evidence that shows putting these two things together. I mean, it kind of goes back to the last argument. Whether there's evidence to show that putting those two things together would have been something a person of skill in the art could have done. And specifically, there's just… it's kind of a burden thing again. There's no evidence that they point to. I mean, this came out obviously very late. We think it wasn't part of what was originally addressed by the examiner. But it's kind of just an afterthought. Well, we could have done this again. The PTAB certainly can invalidate patents. I've argued to them that they shouldn't validate patents in certain cases. But to do so, they need to have a reasoning and they need to have a basis and they need to show evidence. And this is just another example that I think we've seen several of in both of these cases where the PTAB just has reached a conclusion and has said it's obvious and kind of… This is not a case of invalidating a patent. This is not a case of invalidating a patent. There was no patent. The question is whether the examiner was correct. This is an ex parte case. Correct. Well, no, it's invalidating a patent. It's on re-exam. Oh, okay, you're right. It's on re-exam. All right. Sorry, you had me somewhere. But as I understand your point on this one is that with respect to Heinz, that what you're saying is now we're looking at the manual, which doesn't talk about a communications network at all. So it's not a question of substituting one communications network for the other. You're saying you've got to basically find this network. Now you're just trying to pull something out of thin air and throw it in here even though you didn't even have a communications network. So, yes, I think that's the other point is the motivation to mine there is even greater, the lack of motivation to mine at the end of the ability to show one. They had even more burden. And, again, we got nothing. But best, though, on this argument, assume that we don't buy your argument that the regulation is invalid, at best we would get a remand because they simply didn't point to any evidence in the record. Isn't that right? I suppose that's correct, Your Honor, unless the court finds based on the evidence of record there's really no reasonable way that they could find that. Okay. Well, you're way into your point. Again, we'll give you three minutes for rebuttal. You never got to your other point, but we'll see if the government hits it. Thank you, Your Honor. Your Honors, may it please the Court. I would actually like to start with this argument that the Hill-Rand Manual and Hines, that one of skill and the art would have been motivated to combine those references, regardless of whether or not the Hill-Rand Manual has a communication network. Yeah, one of the problems I have with that argument is the point that I was just making, is why shouldn't we at least remand on this because the board really didn't point to any evidence. It just simply said it's there. Well, at 850 the board did. At 850 the board found that there would have been a motivation to combine whether or not the Hill-Rand Manual is deemed to have a communication network because the Hill-Rand Manual bed requires user input to be adjusted. And that would have been obvious to implement the Hines Network in the Hill-Rand Manual for its known and expected function in controlling a medical device. And so because the Hill-Rand Manual has a plurality of modules and has a bed, that has a base frame and a deck, it would have been obvious to use the network that's disclosed in Hines, which also has a movable patient table, to improve those modules and to improve the communication between the modules. So we're supposed to take that one sentence and say that that gets you past a motivation to combine as well as reasonable expectation of success. Well, Your Honor, Hill-Rand never made an argument that there was no reasonable expectation of success in this case. The only thing that Hill-Rand has argued is that there was no motivation to combine. And here there is substantial evidence in the record that shows that there would have been a motivation to combine the Hines Peer-to-Peer Network with the Hill-Rand Manual. And that's because relying on KSR, the board and the examiner looked at the teachings and various patents and prior art references and the effects of the demands that are known in the marketplace and the background knowledge of Gwyneth Gilman Art. And what the examiner and the board found is that a skilled artisan would have used the disclosure in Hines, which taught, as we've discussed, high processing speed, reliable transmission of data, and maintaining the ability to add or delete subsystems and modules, and would have used those teachings to improve the system that's disclosed in the Hill-Rand Manual. Does the claim construction issue affect that analysis? The claim construction issue does not affect that analysis. And that's also because the examiner made the point in its final office action that it was not simply relying on substitution of one communication network for another. What the examiner said, and here I can point to Hill, and it starts at 1405, and in there the examiner explained that the rationale was not limited to the substitution. In particular, the examiner found that one skill in the art would have looked at different types of communication networks that addressed similar issues as the claims invention. And many different types of networks were in existence at the time. And the examiner also noted that adding such a network to the hospital beds that are disclosed in the Hill-Rand Manual, as well as in Travis, would have been predictable. So that's another thing that the examiner pointed to. And then the other thing that the examiner pointed to at 1408 is that the 511 patent broadly claims a peer-to-peer network. The specification does not disclose specific circuitry involved or specific programming involved, but instead the claim that's at issue is very broad. So it would have been obvious to combine the peer-to-peer network that's disclosed in Hines with the adjustable beds that's disclosed in the Hill-Rand Manual. It is a direct disposition, though, to the extent that you do not find that there was sufficient motivation to combine on that basis, that the board also properly affirmed the examiner's claim construction of a communication network. Right. Now, don't we have the problem here with respect to timing and that the broadest reasonable interpretation wouldn't be the interpretation that applies as of today? So it is a direct disposition that currently this court today is reviewing the claim construction de novo. And what the board did at that time when the appeal was filed, the patent had not expired. And so at that time the board applied a broadest reasonable interpretation. So now it is a direct disposition that the court here sitting here today must review that construction and determine whether or not it was reasonable to apply the broadest reasonable interpretation. But we repeatedly say that when we're looking at district court decisions, if something happens in the interim out of the board, we have to take that into consideration, and it's a change in circumstance. Here we have a situation where the board knew full well that this patent was about to expire and that the likelihood that you would get a final judgment from this court before the patent expired was not high. So why wouldn't the board at minimum have made an alternative finding with respect to the claim construction under Phillips? Your Honor, Hill-Rom never apprised the board that the patent was about to expire. At no point before the board did Hill-Rom argue that a Phillips construction should apply because the patent was going to be expired. Well, it's obvious on the face of the patent when it expires, right? Well, Hill-Rom had every opportunity to argue that a Phillips standard should apply. But instead, both the parties argued for claims construction under the broadest reasonable interpretation. And even in its briefing for the court, the only review that Hill-Rom had thought is under the broadest reasonable interpretation. Well, as of that point in time, it was under the broadest reasonable interpretation, but it would not be today. To the extent the court today finds that the board's claims construction was not reasonable, then the board now could review the claim under a Phillips standard. Why don't you make the argument that the broadest reasonable construction can also be the correct construction? That is correct, Your Honor. The broadest reasonable construction here is the correct construction. Looking at the specification, at no point did Hill-Rom specifically construe or specifically disclose any narrow interpretation of communication at work. It's claimed very broadly. If you look at the Heinz patents at A17, at column 1, lines 23 through 26, states in the preferred embodiment, information flow between the electronic modules is primarily accomplished through the use of a twisted pair channel, although other physical protocols would be accessible. I asked you why you don't make that argument, but are you sure it's a good argument? That is to say, is it possible that the broadest reasonable construction could never be the correct construction, because it's not the single right one? It's a reasonable construction. So there may be other constructions that are also reasonable, but if the board's construction is one of the reasonable constructions, But under Phillips, we don't ask whether the construction is reasonable, we ask whether the construction is right. That's correct, Your Honor. So could a broadest reasonable construction ever be right? The broadest reasonable construction could be right. It could also encompass what a Phillips construction could be. But in this case, what the board found is that the specification and the claims at issue do not claim a communication network very broadly. And therefore, the broadest reasonable construction of the communication network here is the reasonable one, because it's broadly claimed and broadly stated in the specification. But Phillips doesn't ask whether it's reasonable. The Phillips standard does not ask whether it's reasonable. The Phillips standard also looks to the claims themselves as well as the specification. And here, the claim language is very broad as well as the specification. And so therefore, it could also be the correct construction. Right, but what if we disagree with you on that? What if we believe that there are two different possible constructions here, one under Phillips, the other under BRI, and that in this case, the BRI and Phillips constructions do not actually converge? To the extent that they would not converge, what the board sitting here today would look at what the board did below. And what the board did below was apply a BRI standard. And so it would be reasonable for the court to now look at that standard under a BRI standard to determine whether or not the court's construction was reasonable. Now, to the extent the court finds that it was not reasonable, the court can then look to a Phillips standard because it does have de novo review. So you're saying that the fact that the patent expired after the board's decision is irrelevant to what we should be doing? That is correct, Your Honor. And also, going back to the other alternative that the board found, and that alternative, the claim construction of communication networks does not even matter. And there was ample motivation to combine whether or not the Hill-Rand manual contains a communication network, to combine that reference with the Hines reference. So, in effect, what we should do is determine whether the board's construction is the correct one and not worry about the BRI issue. I think the point that I'm making is that it doesn't even matter if the claim construction is correct because, at the end of the day, there was ample motivation to combine the disclosure of the Hill-Rand manual with the disclosure in Hines. But to the extent that we do look at claim construction, you would advocate that we look at it through the lens of the BRI, not through the lens of Phillips. That is correct. And that is because you say we're reviewing a decision by the board that was predicated on the non-expired patent. That is correct, Your Honor. Now, because the board made two alternative obvious findings, the court here today need only find one in order to affirm the decision below. So, to the extent that the Hill-Rand manual and the Hines reference can be combined to render the invention obvious, we could finish there. But we also, the examiner also found that the, or the board also found that Travis and the Hill-Rand manual, or Travis and Hines can be combined to render the invention obvious. And here... But let's start with whether Travis was really prior art. I mean, I have to agree with your opponent on the other side that with respect to reduction to practice, there was a ton of evidence that the board really seemed to have ignored on that point. So it's really a question of whether or not the board was correct on conception and whether the board just gave too little credit to what it is that was understood and punished them too much for having alternatives in mind. Let's start with conception. So, with respect to conception, Hill-Rand concedes that it really is relying on Exhibit 1 to show conception of the entire invention. And Exhibit 1, as we discussed, discloses four alternatives that, at the time, the engineers at Hill-Rand manual were considering. Now, one of the things that the Morrison Declaration points to, which now Hill-Rand is arguing that they don't even have to rely on the Morrison Declaration, but looking back at the Morrison Declaration, if you look at page A1177, which is page 4 of the Morrison Declaration, in the second row, Morrison states, with respect to the Exhibit 1 disclosing a peer-to-peer communication network having a plurality of connection points, it states at the end of the second box, those of ordinary skill in the arts would readily recognize that a differential interface channel structure would include a plurality of connection points for the peers on the peer-to-peer network to access the channel. Now, Mr. Morrison here is making a conclusory statement about what's included in the PowerPoint presentation of Exhibit 1. That information is simply not there. So, to the extent that Hill-Rand is now not relying on the Morrison Declaration to show conception, then they haven't even shown whether or not the Exhibit 1 actually shows a peer-to-peer communication network having a plurality of connection points. Also, the director finds that the board and the examiner were correct in finding that there was a reduction to practice errors. And that is because here, Hill-Rand even conceded during his argument that the prosecution of the patent issue really began in March, in earnest in March of 1995. Now, if they conceded the invention in December of 1994, what was happening from December of 1994 to March of 1995 that they waited that long to prosecute the claims at issue? Before you sit down, I want you to, why don't we turn to the motivation to combine as it relates to the primary basis of the board's holding, because I think that that's a really important question and I don't want you to run out of time. So, let's talk about that. Where is the motivation to combine and the reasonable expectation of success? Where does the board cite to evidence with respect to those? So, again, I would like to turn you to the final office action where the examiner really examined what motivation there was to combine the Hines reference with these hospital beds that were in the prior art. And it starts at 1405. Now, first the examiner pointed to the fact that there were different types of communication networks that addressed similar issues as the invention. And here they looked at, for instance, the Hines reference. And now what the Hines reference discloses is that using a peer-to-peer communication network increases the speed of the data, the reliability of the data, and allows you to upgrade modules on your device. And this upgrading of modules is one of the key features that Gilram points to in its 511 patent. And so the fact that if someone who had an adjustable hospital bed wanted to be able to easily upgrade the modules on their bed, they would have looked to add a peer-to-peer communication network. And the prior art taught that. And one of Gil and the art would have looked at the prior art and seen that that was disclosed in the art. I see that I'm almost out of time. Do you have any additional questions? Anything else? All right, thank you. Thank you. So real quickly, just to be clear, both the Travis and Gilram combination with Hines, we've got alternative ways that we believe there are errors. First of all, the Travis wasn't prior art. Second, that Gilram manual shouldn't have been combined because there was no substitution of a network because it didn't have a network. Alternatively, we have the whole, whether it's either of those, whether Hines somehow, there was a teaching to combine Hines with those two secondary references. Unlike the last case where there was absolutely no evidence, this case they try to point to evidence. They say Hines actually gives an express disclosure of a motivation combined. It talks about higher processing speeds. I think we've made very clear in our papers that that's just inaccurate. That is incorrect. Hines does not say that. Hines does talk about high transmission speeds, but does not compare those speeds to any other type of application, including the application that was in the other art. So it's your position that they had to have a comparative analysis as opposed to just the speed might be high as opposed to higher than an alternative network. Correct. There's nothing saying that what was in the other reference itself wasn't high. They were networks as well, and there was no comparison whatsoever. So there's nothing that would have motivated a person looking at one piece of art to combine it with the other. That's, I think, a primary point that applies to both of the secondary references, so both combinations it would work that way. The point on the patent expiration being irrelevant to the appeal, I think, and I didn't have the case with me, but I think this court has been pretty clear that's not the case. So I didn't have anything more on that. The only other point I wanted to make was the question on conception, and when I just heard my opponent argue, I think they're still trying to make the argument that because there were multiple options that somehow renders this document unworkable for a conception document. The other point, though, and really the only other point I heard, was if we don't use the Morrison Declaration, we don't disclose a plurality of connection points, and that's the missing piece, the big missing element from this document, Exhibit 1. I would point the court's attention to A1189 of that document, and in particular, and this is in our reply brief, at the bottom of that page, and this is in that exhibit, there's a picture, a block diagram, that shows a bunch of different modules with a plurality of connection points. So to say that this document, without Mr. Morrison's testimony, and I still believe Mr. Morrison's testimony should be something that should be weighed and used by the court, but even if we didn't have that, we certainly have a picture here that shows a plurality of connection points, which is the point and the element that we were told was missing. And my time is up unless you have any further questions. Okay, thank you.